UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN RUIZ-TOLEDO,<br>Petitioner,<br>v.<br>WARDEN, MESA VERDE DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 1:26-cv-5537-TLN-JDP<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Petitioner, proceeding through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his prolonged detention without a bond hearing violates the Fifth Amendment. Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) based on a prior conviction. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner was admitted to the United States on December 1, 1990, with lawful permanent resident ("LPR") status. ECF No. 6-1 at 2. In September 1994, petitioner was convicted of one count of committing lewd or lascivious acts with a minor and sentenced to three years in prison. ECF No. 6-3. Immigration authorities issued petitioner a notice to appear in immigration court on

September 13, 2004. *See* ECF No. 6-3 at 1. An immigration judge ordered petitioner removed on January 13, 2005. ECF No. 6-1 at 3. Petitioner appealed this order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal; he then appealed the BIA's dismissal to the Ninth Circuit Court of Appeals, which denied his petition for review. *Id.*; *see Ruiz Toledo v. Holder*, No. 05-73836, 396 F. App'x 465 (9th Cir. 2010) ("*Ruiz Toledo I*").[1]

It is unclear what happened in immigration court after the Court of Appeals denied the petition in 2010.[2] Petitioner filed a second petition for review with the Court of Appeals on April 7, 2011. *See Ruiz Toledo v. Holder*, No. 11-70970 (9th Cir.) ("*Ruiz Toledo II*"), ECF No. 1. Meanwhile, in September 2011, an immigration judge granted petitioner bond and found that he was neither a flight risk nor a danger.[3] ECF No. 11 at 1; ECF No. 14 at 1. On February 9, 2012, the parties filed a joint motion requesting that the Court of Appeals remand the case to the BIA. *Ruiz Toledo II*, ECF No. 19. The Court of Appeals remanded the matter on April 9, 2012, and stayed petitioner's removal based on the stipulation and agreement of the parties. *Id.*; ECF No. 6-1 at 3. On June 5, 2014, the BIA reopened the immigration court proceedings and remanded the case to the immigration court. ECF No. 6-1 at 3. Neither party has explained what happened in immigration court for the next eleven years, but both parties agree that petitioner is not currently subject to a final removal order. *See* ECF No. 1 at 10 (stating that government is detaining petitioner under 8 U.S.C. § 1226(a) not under post-removal-order provisions); ECF No. 6 at 1 (stating that government is detaining petitioner under section 1226(c)). Petitioner continued to be at liberty in the community supervised by ICE.

---

[1] Respondents have attached this order to their supplemental brief at ECF No. 14-1 at 1.

[2] Respondents indicate that petitioner had an administratively final removal order at some point, which meant that ICE could detain him for removal under 8 U.S.C. § 1231. *See* ECF No. 14 at 1, n.2. Respondents do not explain what happened to this order but agree that petitioner is no longer subject to a final order of removal. ECF No. 14 at 2.

[3] Petitioner states that he was released from custody on September 29, 2011, and placed on an alternative to detention program by ICE. ECF No. 11 at 1. Respondents confirm that petitioner was out of custody by May 2012 and state that ICE placed him on alternative to detention in March 2013. ECF No. 14 at 1, n.1. Respondents also state that the immigration court ordered petitioner released on a $25,000 bond. *Id.*

On September 16, 2025, deportation officers re-detained petitioner at the ISAP office.[4] *Id.* A deportation officer alleges in a Form I-213 that petitioner "has a history of non-compliance with the ATD program and has received numerous ATD violations." *Id.* at 2. Respondents provide a "notice to terminate ATD participation" form on which the check box for "Pre-Order Program Absconder" is checked, along with the comment "[s]ubject was arrested by ICE for violations and arrest after bond out."[5] ECF No. 14-2 at 1. There is no indication what happened to the $25,000 bond.[6]

Despite claims of multiple ATD violations, the record only reflects one: a missed biometric check-in on July 18, 2025. ECF No. 14-2 at 2. Respondents also note that petitioner was convicted of driving under the influence on March 9, 2021. ECF No. 14-3 at 6. There is no evidence in the record that petitioner absconded from supervision as indicated on the notice to terminate ATD participation form, and petitioner's voluntary attendance on the ISAP office on September 16, 2025, where he was re-detained by ICE, undermines the claim that he absconded from supervision. *See* ECF No. 6-1 at 2.

Petitioner sought release on bond from the immigration court, which denied his request on December 12, 2025, on the basis that petitioner had previously been convicted of an aggravated felony and thus was subject to mandatory detention under 8 U.S.C. § 1226(c). ECF No. 6-2. This decision cites a prior concession by petitioner, not filed in this case, that the conviction is an

---

[4] At the time of his re-detention by ICE in September 2025, petitioner had pending proceedings in immigration court on the non-detained docket, with a hearing scheduled for July 28, 2026. ECF No. 6-1 at 3.

[5] The form serves as a notification from ICE to the ATD contract program manager that petitioner is to be "terminate[d] from ATD." *See* ECF No. 14-2 at 1. It is not a form that notifies petitioner why he is being taken into custody and was produced by ICE after petitioner's re-detention. *Compare id.* (terminating ATD participation at 6:19 p.m. on Sept. 16, 2025) *with* ECF No. 6-1 at 1 (documenting apprehension of petitioner at 10:41 a.m.).

[6] DHS regulations permit an immigration bond to be "breached" when there is a "substantial violation of the stipulated conditions." 8 C.F.R. § 103.6(e). If an ICE official declares a bond breached or cancelled, they "shall notify the obligor on DHS-designated cancelled or breached immigration bonds forms of the decision, and, if declared breached, of the reasons therefor, and of the right to appeal in accordance with the provisions of this part." *Id.* Respondents have provided no indication that ICE complied with this regulation..

aggravated felony.[7] *Id.* The immigration court automated case information site indicates that petitioner has an individual hearing set for December 8, 2026.[8] *See* https://acis.eoir.justice.gov/en/caseInformation (last checked Nov. 6, 2026).

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his prolonged detention without a bond hearing violates due process. ECF No. 1 at 13-14. Respondents argue that petitioner's detention is mandatory under 8 U.S.C. § 1226(c) based on his prior conviction for an aggravated felony from 1994. ECF No. 6 at 2. Respondents also argue that petitioner's mandatory detention has not become unconstitutionally prolonged. *Id.* at 3.

In analyzing petitioner's challenge to his detention, the court must first identify the statutory provision that confers authority for his detention. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008); *Solorzano-Ramirez v. Warden*, No. 1:26-cv-2540-DC-CSK, 2026 WL 1257256, at *2 (E.D. Cal. May 7, 2026). The petition alleges that petitioner is subject to

---

[7] The Court of Appeal's order in *Ruiz Toledo I* also indicates that petitioner did not challenge his removability for that conviction. *See* ECF No. 14-1 at 2.

[8] Respondents asserted on November 3, 2026 that—since petitioner's re-detention in September 2025—petitioner's "removal proceedings have proceeded expeditiously and may conclude [on November 4, 2026.]" ECF No. 14 at 2. This was not the case.

discretionary detention under section 8 U.S.C. § 1226(a). *See* ECF No. 1 at 10. However, petitioner makes no attempt to explain why his prior conviction is not an aggravated felony, as found by the immigration court at ECF No. 6-3 at 1. Respondents cite authority for the proposition that petitioner's conviction is an aggravated felony. *See R. Gomez-R v. Holder*, 556 F. App'x 578 (9th Cir. 2014) (unpublished) (applying *United States v. Baron-Medina*, 187 F.3d 1144 (9th Cir. 1999) to determine that a Penal Code § 288(a) conviction constitutes an aggravated felony). Petitioner provides no authority to the contrary and focuses his traverse on the prolonged detention claim that applies "[e]ven accepting the Government's premise that § 1226(c) governs[.]"[9] *See* ECF No. 7 at 3. I also note that in *Ruiz Toledo v. Holder*, 396 F. App'x 465 (9th Cir. 2010), the Court of Appeals found that the immigration court had determined that petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction for an aggravated felony.

I find that respondents are mandatorily detaining petitioner under 8 U.S.C. § 1226(c). Pursuant to section 1226(c), "detention is mandatory, and a noncitizen of the United States . . . therefore is not statutorily entitled to a bond hearing." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023); *see* 8 U.S.C. § 1226(c)(1); *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

This does not end the inquiry, however, because petitioner has raised a due process claim. While the Supreme Court has rejected a facial challenge to mandatory detention under section 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003), an as applied challenge is not foreclosed. In addition, "[t]he Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)." *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB, 2025 WL 2939178, at *4 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025). "[T]he First, Second, and Third Circuits have found that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [that section].'" *Id.* at

---

[9] The immigration judge's bond denial order notes that the notice to appear charges petitioner with the prior conviction, and that petitioner has previously conceded in immigration court that the conviction constitutes an aggravated felony. ECF No. 6-3 at 1.

*5 (quoting *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021); *see also Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after *Demore* and *Jennings*, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable).

"[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citation omitted); *see also Loba L.M.*, 2025 WL 2939178, at *5; *Solorzano-Ramirez*, 2026 WL 1257256, at *2; *Keo v. Chestnut*, No. 1:26-cv-01192-DJC-CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026). As noted in *Rakeshkumar H.P. v. Warden*, No. 1:26-cv-02869-MWJS, 2026 WL 1146201, at *1-2 (E.D. Cal. Apr. 28, 2026), "Judges have reached different conclusions about what standards ought to govern constitutional challenges of [this] sort." *See also Keo*, 2025 WL 1029392, at *5 (collecting cases).

Petitioner argues for a bright line six-month standard based on *Zadvydas*, 533 U.S. at 701, that is not supported by controlling precedent. *See* ECF No. 1 at 15. After *Demore*, the Court of Appeals held that mandatory detention under section 1226(c) has an implicit six-month limit, at which time the government must justify continued detention by clear and convincing evidence at a bond hearing. *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-81 (9th Cir. 2015). But the Supreme Court reversed, finding that this statutory provision cannot reasonably be read to limit detention to six months. *Jennings v. Rodriguez*, 583 U.S. 281, 303-306 (2018). As the Court of Appeals noted on remand, however, the Supreme Court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). "Since the *Rodriguez* remand, there has been a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Lopez v. Garland*, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022)

(internal quotation marks and citation omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under section 1226(c) becomes unconstitutional, courts in this Circuit have used varied tests to determine whether due process requires a bond hearing. The three main tests are: (1) the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976); (2) the test announced in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); and (3) the test announced in *Lopez*, 631 F. Supp. 3d at 879, where the court determined whether prolonged mandatory detention under section 1226(c) violates the Due Process Clause by considering three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[10]

Petitioner cites a four-factor test set forth in *Kydyrali v. Wolf*, 499 F. Supp. 3d 768 (S.D. Cal. 2020), which overlaps substantially with the factors in the *Lopez* test. *See* ECF No. 1 at 15. In the absence of binding authority instructing the court which test to employ, I analyze petitioner's claim under the *Lopez* test because that case dealt with the same statutory authority under which petitioner is detained. Moreover, "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118. Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879. Accordingly, petitioner's claim is analyzed under the three factors articulated in *Lopez*: (1) the total length of detention to date; (2) the likely duration of future

---

[10] The *Lopez* test utilizes three factors from the *Banda* test. *Lopez*, 631 F. Supp. 3d at 877-79. In *Banda*, to determine whether prolonged mandatory detention under section 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

detention; and (3) the delays in proceedings caused by petitioner and the government. I consider each factor in turn.

**I. Total Length of Detention**

Petitioner has been in immigration custody since September 16, 2025, a period of almost fourteen months. *See* ECF No. 6-1 at 2. "In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-5321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (collecting cases) (cleaned up). Courts in this Circuit have found that even shorter period of detention weigh in favor of relief. *See Rodriguez Caneo v. Warden*, No. 1:26-cv-5639-EJD, 2026 WL 3079304, at *3 (E.D. Cal. Oct. 14, 2026) (ten months); *Basden v. Warden,* No. 1:25-cv-0123-KES-EGC, 2026 WL 2453613, at *4 (E.D. Cal. Aug. 21, 2026) (ten months); *Ramon v. Blanche*, No. 26-cv-2849-CFE, 2026 WL 1836006, at *2 (C.D. Cal. June 17, 2026) (seven months); *Lopez v. Warden of California City Det. Facility*, No. 1:26-cv-1525-CSK, 2026 WL 834573, at *3 (E.D. Cal. Mar. 26, 2026) (ten months); *Estrada Sanchez v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1964-KES-SKO, 2026 WL 764693, at *3 (E.D. Cal. Mar. 18, 2026), *report and recommendation adopted*, 2026 WL 913001 (E.D. Cal. Apr. 2, 2026) (ten months); *Haidari v. ICE.*, No. 2:26-cv-0039-TL, 2026 WL 764689, at *3 (W.D. Wash. Mar. 18, 2026) (six months); *Singh v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1632-SKO, 2026 WL 181553, at *4 (E.D. Cal. Jan. 23, 2026) (ten months); *Amando v. DOJ*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (seven months); *Gurung v. Larose*, No. 26-cv-0920-LL-MSB, 2026 WL 776841, at *4 (S.D. Cal. Mar. 19, 2026) (eight months). As petitioner has been in immigration custody almost fourteen months without a bond hearing, this factor weighs strongly in favor of petitioner.

**II. Likely Duration of Future Detention**

The court must next determine "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Petitioner's removal proceedings have taken over twenty-two years so far. *See* ECF No. 6-3 at 1

(citing notice of appeal date of Sept. 13, 2004). Neither party has helped the court understand why the immigration case has taken so long. The EOIR automated case information system indicates that there is no removal order in this matter and that an individual hearing is was just reset from November 4, 2026 to December 8, 2026. See https://acis.eoir.justice.gov/en/caseInformation (last checked Nov. 5, 2026.)

The fact that removal proceedings have already taken twenty-two years prompts me to weigh this factor heavily in petitioner's favor. Petitioner has appealed a removal order twice in the past, *see Ruiz Toledo v. Holder*, 396 F. App'x 465 (9th Cir. 2010), *Ruiz Toledo v. Holder*, No. 11-70970 (9th Cir.). There exists the possibility of another appeal if he is again ordered removed. *See Arido-Sorro v. Garland*, No. 23-cv-0842-PHX-JAT, 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 (D. Ariz. Nov. 20, 2024) ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process."); *Loba L.M. v. Andrews*, No. 1:25-cv-0611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-cv-1807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of the petitioner who had appealed the Immigration Judge's decision to the BIA).

BIA appeals can take a substantial period. "Courts have found that pending administrative and possible Ninth Circuit appeals can be 'sufficiently lengthy' such that it favors Petitioner's ability to be heard." *Kaur v. Lyons*, No. 26-cv-0217-PHX-KML, 2026 WL 967846, at *5 (D. Ariz. Mar. 24, 2026), *report and recommendation adopted*, 2026 WL 963792 (D. Ariz. Apr. 9, 2026); *see also Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-0098-SAB, 2025 WL 2099343, at *7 (E.D. Cal. July 25, 2025) (citing *German Santos v. Warden*,

965 F.3d 203, 211 (3d Cir. 2020)); *Arechiga v. Archambeault*, No. 2:23-cv-0600-CDS-VCF, 2023 WL 5207589, at *4 (D. Nev. Aug. 11, 2023) ("It is anyone's guess how long it will take the BIA to reconsider [the] petition . . . or how long subsequent appeals of that decision might take.").

Accordingly, I find that the second factor weighs squarely in favor of petitioner.

**III. Delays in Proceedings Caused by Petitioner and the Government**

Lastly, the court must consider the nature and extent of delays caused by petitioner and the government. Petitioner alleges that "[t]here is no evidence in the record that Petitioner has sought a continuance, filed a frivolous motion, or otherwise caused delay in his case." ECF No. 1 at 12. Respondents do not contest that allegation. *See* ECF Nos. 6, 17. There is no discussion by either party regarding delays since petitioner's re-detention, and, accordingly, I find that the third factor is neutral.

On balance, the total length of detention, "which is the most important factor," *see Banda*, 385 F. Supp. 3d at 1118, weighs in favor of petitioner. The length of future proceedings also weighs in petitioner's favor. Accordingly, a weighing of the *Lopez* factors supports a finding that petitioner's detention without a bond hearing violates his Fifth Amendment Due Process rights.

Given this finding, I must determine the remedy. Petitioner requests immediate release from custody, or a bond hearing. ECF No. 1 at 16. Respondents do not discuss the matter of relief. *See* ECF No. 6 at 4; ECF No. 14 at 5.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Habeas corpus is an equitable remedy and "[f]ederal courts have a fair amount of flexibility" to tailor the remedy to the constitutional violation. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005); *see also Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable

remedies.”).

In considering the court’s equitable power to fashion a remedy, I note that several factors weigh in favor of immediate release. It is undisputed that petitioner lived in the United States as an LPR since December 1990. Despite a 1994 aggravated felony and the pendency of an immigration case since September 2004, petitioner is not currently subject to a final order of removal. LPRs are “lawfully present in the United States until a final deportation or removal order is entered.” *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010). The Supreme Court has held that LPR status “carries several important privileges: he may remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence in the United States.” *Saxbe v. Bustos*, 419 U.S. 65, 72 (1974). Notably, LPRs “do not lose their due process protections and liberty interest merely because they are subject to removal.” *Amezcua*, 2026 WL 1048212.

Courts in this Circuit, including this one, have held that an LPR has a protected liberty interest in not being detained by ICE. *See Burton v. Larose*, No. 3:26-cv-2627-JES-BJW, 2026 WL 1256875, at *2-3 (S.D. Cal. May 7, 2026); *B.R. v. Warden*, No. 1:26-cv-0810-TLN-CSK, 2026 WL 1091489, at *2 (E.D. Cal. Apr. 22, 2026); *Amezcua v. Noem*, No. 5:26-cv-1070-SRM-AGR, 2026 WL 1048212, at *6 (C.D. Cal. Mar. 25, 2026); *Galvan Maldonado v. Andrews*, No. 1:26-cv-1451-DJC-JDP, 2026 WL 1864622 (E.D. Cal. June 29, 2026). LPRs have protected liberty interests in maintaining ties with their community and remaining free from governmental restraint. *See Amezcua*, 2026 WL 1048212, at *6 (collecting cases).

As further support for immediate release, I note that petitioner was out of custody under ICE supervision since 2011, when an immigration judge determined that petitioner was neither a flight risk nor a danger and ordered him released on a $25,000 bond despite his prior conviction.[11]

---

[11] Respondents assert that petitioner was detained under section 1231 at that time, which mandates detention for the purpose of removal, and argue that the current basis for mandatory detention, 8 U.S.C. § 1226(c), changes the analysis. ECF No. 14 at 2. However, both bases for detention are mandatory, and respondent implicitly concedes that an immigration judge considered whether petitioner posed a flight risk or danger in 2011 and ordered him released on bond despite his prior conviction and the statutory mandatory detention authority. *Id.*

ECF No. 14 at 1, n.1. Petitioner's release from custody in 2011, despite his aggravated felony, further gave him a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

From September 29, 2011, to September 16, 2025, petitioner was out of custody in his immigration case, having been found by an immigration judge not to be a flight risk or a danger in 2011, despite his 1994 aggravated felony conviction. *See* ECF No. 6-1 at 2; ECF No. 17 at 1, n.1. For most, if not all, of this period of release, petitioner was supervised on ICE's alternative to detention program for which only one violation was noted, a missed check-in in July 2025. ECF No. 14-2 at 2. Despite that constitutionally protected liberty interest, petitioner did not receive any process when ICE re-detained him: there is no indication that he received notice, an opportunity to be heard on the allegation that he violated his release by missing one biometric check-in months prior to his re-detention, or any pre-deprivation hearing on whether he was a flight risk or danger. The reason asserted in the record for his re-detention—that he absconded from supervision—is belied by the record, which shows that petitioner went to the ISAP office in September 2026 to check in. The allegations of "violations" of ATD supervision are not supported by the record, which indicates only one alleged violation months prior to his re-detention. Finally, the allegation that petitioner violated ATD by being convicted of a DUI in 2021 also appears to be a post-hoc rationalization, as petitioner was continued on ATD for five years after that conviction.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification either for petitioner's prolonged

detention without a bond hearing, or for re-detaining petitioner without providing him any process. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning her to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21. Given all the facts in this procedurally unusual case, I recommend that petitioner be immediately released from custody subject to the prior order of supervision.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's request for a status update, ECF No. 8, is DENIED as moot.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 092-743-501) from their custody on the same conditions as prior to his re-detention. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Mesa Verde Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed

within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: November 10, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE